**Account Number:** 7090951455
**Investor Account Number:** 0021252370
**Investor/Owner Name:** The Bank of New York Mellon f/k/a The Bank of New York as Successor to JPMorgan Chase Bank, N.A., as Trustee for Asset Backed Funding Corporation Asset-Backed Certificates, Series 2003-AHL1

This document was prepared by PHH Mortgage Corporation

**After Recording Return To:**
PHH Mortgage Corporation
Attention: Modification Processing
PO Box 24737
West Palm Beach, FL 33416-9838

_____ [Space Above This Line For Recording Data] _____

# LOAN MODIFICATION AGREEMENT

The debtor(s), JUANITA ALLEN, LORENZO ALLEN and The Bank of New York Mellon f/k/a The Bank of New York as Successor to JPMorgan Chase Bank, N.A., as Trustee for Asset Backed Funding Corporation Asset-Backed Certificates, Series 2003-AHL1 through the servicer of the underlying mortgage agreement, PHH Mortgage Corporation, have agreed to modify the terms of said underlying mortgage agreement. The Bank of New York Mellon f/k/a The Bank of New York as Successor to JPMorgan Chase Bank, N.A., as Trustee for Asset Backed Funding Corporation Asset-Backed Certificates, Series 2003-AHL1 is the owner of the account and retains all rights to collect payments as per the underlying mortgage agreement. PHH Mortgage Corporation, remains servicer for said underlying mortgage agreement.

**THIS IS A BALLOON MORTGAGE AND THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL BALANCE DUE UPON MATURITY IS $747,244.45, TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE.**

### BALLOON PAYMENT DISCLOSURE

THIS MODIFICATION AGREEMENT INCLUDES A BALLOON PAYMENT, WHICH MEANS EVEN IF ALL THE SCHEDULED PAYMENTS ARE

MADE WHEN DUE, THE ACCOUNT WILL NOT BE PAID IN FULL AT THE END OF ITS TERM. AS A RESULT, ON THE MATURITY DATE OUTLINED WITHIN THIS AGREEMENT, IT WILL BE REQUIRED THE ENTIRE REMAINING PRINCIPAL BALANCE PLUS ALL ACCRUED BUT UNPAID INTEREST AND ALL OTHER AMOUNTS OWING ON THAT DATE (INCLUDING, BUT NOT LIMITED TO, ALL ADVANCES MADE BY LOAN SERVICER UNDER THE TERMS OF THE SECURITY INSTRUMENT) BE REPAID IN A SINGLE PAYMENT.

*CAUTION TO BORROWER: NO OBLIGATION TO REFINANCE* – LOAN SERVICER HAS NO OBLIGATION TO REFINANCE THIS ACCOUNT OR MAKE A NEW LOAN ON THE MATURITY DATE. IF THE FUNDS TO PAY THE BALLOON PAYMENT ARE NOT AVAILABLE WHEN IT COMES DUE, A NEW LOAN AGAINST THE PROPERTY MAY HAVE TO BE OBTAINED TO MAKE THE BALLOON PAYMENT. ASSUMING ANOTHER LENDER MAKES A NEW LOAN ON THE MATURITY DATE, THE ACCOUNT WILL PROBABLY BE CHARGED INTEREST AT THE MARKET RATE PREVAILING AT THAT TIME. SUCH INTEREST RATE MAY BE HIGHER THAN THE INTEREST RATE PAID ON THIS ACCOUNT. COMMISSIONS, FEES AND EXPENSES MAY HAVE TO AGAIN BE PAID FOR THE ARRANGING OF THE NEW LOAN. IN ADDITION, IF THERE IS AN INABILITY TO MAKE THE MONTHLY PAYMENTS OR THE BALLOON PAYMENT, THE PROPERTY MAY BE LOST, ALONG WITH ALL OF THE EQUITY, THROUGH FORECLOSURE. KEEP THIS IN MIND IN DECIDING WHETHER TO AGREE TO THE TERMS OF THIS MODIFICATION.

This Modification Agreement ("Agreement"), made this 01 day of AUG, 2022, between JUANITA ALLEN, LORENZO ALLEN ("Borrower") and PHH Mortgage Corporation, Lender/Servicer or Agent for Lender/Servicer ("Lender"),  amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed ("Security Instrument") dated 11/18/2002 and recorded in the Records of BROWARD County, FL and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

6207 NW 66TH WAY PARKLAND, FL 33067

The real property described being set forth as follows:

**(Legal Description Attached, if Applicable, for Recording Only)**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

**Representations:**

- Borrower is experiencing a financial hardship and as a result, 1) is or will be in default under the Mortgage Documents and 2) does not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments due under the Mortgage Documents.
- Under penalty of perjury, if required by the Lender, Borrower provided Lender with full and complete information that, when provided, accurately stated borrower's income, expenses and assets. To the extent requested by Lender, Borrower provided documents that supported that information.
- Borrower has made any and all required Trial Period Plan payments or down payments.
- Borrower currently has sufficient income to support the financial obligations under the Mortgage Documents, as modified by this Agreement.

**Acknowledgements and Preconditions to the Modification:**

- Lender has no obligation to make any modification of the Mortgage Documents if any of the requirements under this Agreement are not met.
- Prior to the Modification Effective Date (defined as 09/01/2022), if Lender determines any of the representations above are no longer true and correct, 1) the Mortgage Documents will not be modified, 2) this Agreement will not be valid, and 3) Lender will have all of the rights and remedies provided by the Mortgage Documents.

- The Mortgage Documents will not be modified unless and until 1) Lender approves this Agreement and 2) the Modification Effective Date has occurred.

**Modified Loan Terms:**

- If all of Borrower's representations above continue to be true and correct and all preconditions to the modification set forth above have been met, the Mortgage Documents will automatically become modified on 09/01/2022. If Borrower has failed to make any payments that are a precondition to this modification, this modification will not take effect.

  The new Maturity Date will be 03/01/2033.

  Borrower understands that in order to reach an affordable payment under this modification, the mortgage may have been re-amortized beyond the maturity date. This means that if all payments are made in accordance with the mortgage terms, when Borrower reaches the maturity date, there will be an outstanding balance due.

  This amount includes an interest-bearing balloon payment in the amount of $618,185.55 and a non-interest bearing deferment amount of $129,058.90 making the total balloon payment of $747,244.45 ('Balloon Payment') which is due when the mortgage reaches maturity or is sold, refinanced or otherwise accepted by the Lender as paid in full. Borrower specifically acknowledges that this is a balloon modification and therefore, the Borrower will owe a balloon payment at maturity in the approximate amount of $747,244.45.

  BALLOON PAYMENT: THIS MORTGAGE LOAN CONTAINS A BALLOON PAYMENT PROVISION. A BALLOON PAYMENT IS A SCHEDULED LUMP SUM USUALLY DUE AT THE END OF THE MORTGAGE TERM THAT IS SIGNIFICANTLY LARGER THAN THE OTHER REGULARLY SCHEDULED PERIODIC PAYMENTS. IF IT IS NOT AFFORDABLE TO PAY THE BALLOON PAYMENT WHEN DUE, A NEW LOAN MAY HAVE TO BE OBTAINED TO MAKE THE BALLOON PAYMENT OR THE PROPERTY MAY BE LOST THROUGH FORECLOSURE. BEFORE DECIDING TO TAKE THIS LOAN, CAREFULLY CONSIDER THE ABILITY TO PAY THE BALLOON PAYMENT WHEN IT COMES DUE. THE BALLOON PAYMENT ON THE MORTGAGE LOANUNDER REVIEW IS DUE 126 MONTHS FROM THE DATE THE MORTGAGE TERM BEGINS.

  CAUTION TO BORROWER: IF THERE ARE NO FUNDS TO PAY THE BALLOON PAYMENT WHEN DUE, IT MAY BE NECESSARY TO OBTAIN A NEW LOAN AGAINST THE PROPERTY FOR THIS PURPOSE AND IT MAY BE REQUIRED TO AGAIN PAY COMMISSION AND EXPENSES FOR ARRANGING THE LOAN. KEEP THIS IN MIND IN DECIDING UPON THE AMOUNT AND TERMS OF THE LOAN THAT IS SELECTED AT THIS TIME.

  The current Unpaid Principal Balance is $370,794.87. The New Principal Balance of the Note will be $852,510.74 (the 'New Principal Balance'). This includes amounts and arrearages that are past due as of the Modification Effective Date (including, but not limited to, unpaid and any previously deferred principal and interest, fees, escrow advances and other costs, collectively, 'Unpaid Amounts') excluding any fees, costs and/or corporate advances not added to the account as of the Modification Agreement Date and amounts not added to the New Principal Balance due to investor and/or mortgage insurer restrictions less any amounts paid to the Lender but not previously credited to the Loan.  Any amounts not added to the New Principal Balance will remain on the account until paid and will become due when the interest-bearing balance is paid in full or upon maturity as applicable pursuant to State or Federal law.

- The New Principal Balance may represent the sum of the "Deferred Principal Balance" (if applicable), the "Principal Forgiveness" (if applicable) and the "Interest Bearing Principal Balance." The Interest Bearing Principal Balance is $723,451.84. Borrower understands that by agreeing to add the Unpaid Amounts to the Unpaid Principal Balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. Borrower also understands that this means interest will now accrue on the unpaid interest that is added to the New Principal Balance, which would not happen without this Agreement.

- Borrower promises to pay the New Principal Balance, plus interest, and any future fees/costs to the order of the Lender. Interest will be charged on the Interest Bearing Principal Balance at the yearly rate of 3.50000% , beginning 09/01/2022. Borrower promises to make monthly payments of principal and interest of U.S. $2,802.59, beginning on 10/01/2022 and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. Borrower promises to also pay any applicable monthly escrow payments as outlined in this Agreement. The initial monthly escrow amount is $1,891.07. The yearly rate of 3.50000% will remain in effect until principal and interest are paid in full. If on

03/01/2033 (the 'Maturity Date'), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date. Borrower agrees to pay in full all amounts still owed under the Note and the Security Instrument by the earliest of: (i) The date Borrower sells or transfers an interest in the Property, (ii) The date Borrower pays the entire Interest Bearing Principal Balance, or (iii) the Maturity Date.

- $129,058.90 of the New Principal Balance shall be deferred ('Deferred Principal Balance') and Borrower will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the 'Interest Bearing Principal Balance' and this amount is $723,451.84. Interest will be charged on the Interest Bearing Principal Balance at the yearly rate of 3.50000% , from 09/01/2022. Borrower promises to make monthly payments of principal and interest of U.S. $2,802.59, beginning on 10/01/2022, and continuing thereafter on the same day of each succeeding month until the Interest Bearing Principal Balance and all accrued interest thereon have been paid in full. The yearly rate of 3.50000% will remain in effect until the Interest Bearing Principal Balance and all accrued interest thereon have been paid in full. Borrower promises to also pay any applicable monthly escrow payments as outlined in this agreement. The initial monthly escrow amount is $1,891.07. Upon 03/01/2033 (the 'Maturity Date'), Borrower will still owe amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date. If on 03/01/2033, Borrower still owes amounts under the Note and Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date. Borrower agrees to pay in full the Deferred Principal Balance and any other amounts still owed under the Note and the Security Instrument by the earliest of: (i) The date Borrower sells or transfers an interest in the Property, (ii) The date Borrower pays the entire Interest Bearing Principal Balance, or (iii) the Maturity Date. Borrower specifically acknowledges that this is a balloon modification and therefore Borrower will have a balloon payment due at maturity in the approximate amount of $747,244.45.

The initial monthly escrow amount is $1,891.07. The escrow payments may be adjusted periodically in accordance with applicable law due to changes in property taxes, insurance amounts or other escrow expenses and therefore the total monthly payment may change accordingly. The escrow payment amount shown is based on current data and represents a reasonable estimate of expenditures for future escrow obligations; however, escrow payments may be adjusted periodically in accordance with applicable law.

Borrower's payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| '1 - Maturity' | 3.50000% | 09/01/2022 | $2,802.59 | $1,891.07, adjusts periodically | $4,693.66, adjusts periodically | 10/01/2022 | 126 |

*The escrow payments may be adjusted periodically in accordance with applicable law due to changes in property taxes, insurance amounts or other escrow expenses and therefore the total monthly payment may change accordingly. The escrow payment amount shown is based on current data and represents a reasonable estimate of expenditures for future escrow obligations; however, escrow payments may be adjusted periodically in accordance with applicable law.

**Additional Agreements:**

- **Transfer of Property.** If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

- **Original Loan Document Conditions.** Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument and Note, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument and Note; however, if applicable, the following terms and provisions are forever canceled, null and void, as of 09/01/2022:

  a.  all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

  b.  all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

- Borrower understands and agrees that:

  a.  **Default Under the Modification.** All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

  b.  **Original Loan Document Conditions.** All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender. Borrower agrees that the Mortgage Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

  c.  **Modification Does Not Constitute Release.** Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

  d.  **Costs and Expenses.** All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender or not permitted per State or federal law.

  e.  **Agreement to Provide Any Additional Modification Documents.** Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower. Borrower will execute such other documents as may be reasonably necessary to correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. Borrower understands that either a corrected Agreement or a letter agreement containing the correction will be provided to Borrower for Borrower's signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If Borrower elects not to sign any such corrective documentation, the terms of the original Mortgage Documents shall continue in full force and effect, such terms will not be modified by this Agreement. Borrower agrees to deliver any such corrective documents within ten (10) days after Borrower receives the Lender's written request for such replacement.

  f.  **Agreement of Use of Non-Public Information.** Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number,

(ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

g.  **Consent to Contact.** Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

- **Escrow Account.** By this section, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked and Borrower has been advised of the amount needed to fully fund the Escrow Account.

Borrower will pay to Lender on the day payments are due under the Mortgage Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Mortgage Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Mortgage Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items."  Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Mortgage Documents, as the phrase "covenant and agreement" is used in the Mortgage Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Mortgage Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Mortgage Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Mortgage Documents, Lender shall promptly refund to Borrower any Funds held by Lender.

- **Severability.** Whenever possible, each provision of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be or become prohibited or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity without invalidating the remainder of such provision or the remaining provisions of this Agreement.

- **Inclusion of Exhibits.** Borrower authorizes Lender to attach an Exhibit A to this Agreement, which may include a Legal Description, recording information of the original security instrument, and any other relevant information required by a County Clerk (or other recordation office) to allow for recording if and when Lender seeks recordation.

- **Errors and Omissions.** That if any documents related to the Mortgage Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, Borrower will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. All documents the Lender requests of Borrower under this section shall be referred to as "Documents." Borrower agrees to deliver the Documents within ten (10) days after Borrower receives the Lender's written request for such replacement. At Lender's option, this Agreement will be void and of no legal effect and the loan terms will revert to the terms prior to the approved modification.

- **Final Agreement.** This Agreement may not be supplemented, changed, modified or omitted except by written document executed by both the Lender and the Borrower. This Modification constitutes the entire agreement between the Lender and Borrower and supersedes all previous negotiations and discussions between the Borrower and the Lender and neither prior evidence nor any prior or other agreement shall be permitted to contradict or vary its terms. There are no promises, terms, conditions, or obligations other than those contained in this Agreement.

- **Additional Events of Default.** Without limiting the other events of default set forth in the Mortgage Documents, Borrower will be in default under this Agreement and under the Mortgage Documents upon the occurrence of any one or more of these events:

  a. Any material representation or warranty made by you in the Mortgage Documents, this Agreement, or any initial agreement proves to be false or misleading in any respect.

  b. Borrower fails to make the New Monthly Payments as required by this Agreement.

  c. Borrower sells or conveys any interest in the Property without Lender's prior written consent.

  d. Breach of any of the terms or provisions of this Agreement.

- **Consequences of Default.** If Borrower defaults under this Agreement or the Mortgage Documents after the Modification Effective Date (your "Default"), Lender may, in addition to the remedies provided by the Mortgage Documents, subject only to applicable law, institute any foreclosure or collection proceedings without prejudice for having accepted any payments, including but not limited to the New Monthly Payments, under this Agreement and exercise any of its rights and remedies against Borrower under the Mortgage Documents and/or this Agreement.

- **Mortgage Insurance.** Borrower understands that the mortgage insurance premiums on the Loan, if applicable, may increase as a result of the capitalization which may result in a higher total monthly payment. Furthermore, the date on which Borrower may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

- **Credit Reporting.** Lender is required to report factual information to the credit reporting agencies. Lender may report information about the account to credit bureaus. Late payments, missed payments, or other defaults on the account may be reflected in the credit report.

- **No Novation.** Borrower expressly agrees that this Agreement is not a new loan from Lender but simply the modification of the existing obligations under the Mortgage Documents. Neither Borrower nor Lender has any intention to extinguish or discharge the indebtedness or the liens evidenced by the Mortgage Documents.

- **Origination Requirements:** This modification is on a mortgage on which applicable documentary stamp taxes were paid on the mortgage at the time of the recording.

## BORROWER ACKNOWLEDGEMENT

**IMPORTANT – Do NOT sign this Agreement unless you are in the presence of a notary. If extenuating circumstances prevent one notary signature, separately signed and notarized agreements will be accepted; however, the agreements must be returned in the same package to PHH Mortgage Corporation.**

Each of the Borrower(s) and the Lender acknowledge that no representations, agreements or promises were made by the other party or any of its representatives other than those representations, agreements or promises specifically contained herein. This Agreement, and the Note and Security Instrument (as amended hereby) set forth the entire understanding between the parties. There are no unwritten agreements between the parties.

All individuals on the mortgage, note and the property title must sign this Agreement.

**If extenuating circumstances prevent one notary signature, separately signed and notarized agreements will be accepted; however, the agreements must be returned in the same package to PHH MORTGAGE CORPORATION.**

4/18/22
_____
Date

JUANITA ALLEN

6/18/22
_____
Date

LORENZO ALLEN

**BORROWER ACKNOWLEDGEMENT**

(CONTINUED)

State of ___Florida___

County of ___Broward___

The foregoing instrument was acknowledged before me, the undersigned, a Notary Public in and for said county and state,  by means of [X] physical presence or [ ] online notarization this IX day of __August__ , __2022__ , by __Lorenzo Allen + Juanita Allen_____personally known to me or identified to my satisfaction to be the person(s) who executed the within instrument, and they duly acknowledged that said instrument is their act and deed, and that they, being authorized to do so, executed and delivered said instrument for the purposes therein contained.

Witness my hand and official seal.

_____
Notary Public

My Commission Expires: ___10/7/25_____

BRYAN POLAN
MY COMMISSION # HH 139168
EXPIRES: October 7, 2025
Bonded Thru Notary Public Underwriters

## LENDER ACKNOWLEDGEMENT
### (For Lender's Signature Only)

Lender acknowledges that no representations, agreements or promises were made or any of its representations other than those representations, agreements or promises specifically contained herein. This Agreement, and the Note and Security Instrument (as amended hereby) set forth the entire understanding between the parties. There are no unwritten agreements between the parties.

PHH MORTGAGE CORPORATION


_____

Authorized Signer


_____

Date


State of _____

County of _____

On this \_\_ day of _____, \_\_\_\_, before me, the undersigned, a Notary Public in and for said county and state, personally appeared _____, personally known to me or identified to my satisfaction to be the person who executed the within instrument as _____ of PHH Mortgage Corporation, said instrument is their act and deed, and that they, being authorized to do so, executed and delivered said instrument for the purposes therein contained.

Witness my hand and official seal.


_____

Notary Public

My Commission Expires:_____